may please the court the BIA in this case from the immigration judge decision without opinion. Therefore, the court reviews this problem, therefore, the court reviews the immigration judge decision. This case turns exclusively to the BIA. The immigration judge denied the petitioner a silent application for lack of credibility. But the immigration judge entered the adverse credibility determination against the petitioner for all the wrong reasons. The central event in this case is the wife's forced abortion in 1995. The immigration judge doubted that that forced abortion had ever occurred because, according to the immigration judge's reasoning, if the petitioner's wife was forced to undergo an abortion in 1995, the government would have taken some action when she was pregnant with her second child and her third child. What the immigration judge did in this case was engaging in speculation and conjecture as to what a persecutor would likely do or likely not do under certain circumstances, a practice frowned upon by this court. This court has consistently held that a personal conjecture is not a substitute for substantial evidence in supporting an immigration judge's adverse credibility finding. The immigration judge's analysis in this regard is also unreasonable based upon evidence in record. On page 159 of the administrative record, the petitioner clearly testified that at the birth of his third child, the government did not know about this third child. So therefore, when the wife was pregnant with the third child, the government didn't even know that the wife was pregnant with the third child. So of course, even the government would like to have taken some action, the government would not have been able to do so because the government did not know about the pregnancy. The record also shows that the government found out about the birth of the second child after she was born. So as soon as it found out about the birth of the second child, the government did take action and it detained the petitioner for six months and released him only after he paid a fine in the amount of 20,000 RMB. So again, the record indicates that the government was in the dark when the petitioner arrived. The immigration judge found that the testimony with regard to the detention after the birth of the second child was not credible. So we can't just assume that the government acted to detain him after the birth of the second child, although it appears that the immigration judge found the testimony as to the fine resulting from the birth of the second child to be credible. So it does seem to find that he was punished for the birth of the second child, but not imprisoned. I don't know whether that changes your argument anyway. That indicates that the government was not aware of the wife's pregnancy with the second child. So the government took some action after it found out about the birth of the second child. This brings me to my next point. The immigration judge also cast doubts over the petitioner's testimony of his detention and physical abuses in the 1998 detention. The petitioner testified that he was detained for one month in 1998 and he suffered severe physical abuses during that period. The immigration judge again doubted that this detention had ever happened, but the only reason offered by the immigration judge to support her disbelief is that according to her reading of the country reports, that petitioner's testimony of his detention is inconsistent with the country reports. As pointed out in my opening brief, that the country reports do indicate that detained government officials often resort to detention in enforcing the family planning policy. Do you have specific references to the record where that appears in the country reports? Yes, Your Honor. And the government actually acknowledged that the IJ made an error in relying upon the country reports. That's on page 212, Your Honor, of the administrative record. According to the country reports, the country reports cited to a former local family planning official who happened to be from Fujian and the same province that the petitioner is from. According to that family planning official, the local authorities in the Fujian town systematically used coercive measures such as forced abortion and sterilization and detention and destruction of property to enforce force quotas. So the immigration judge patently wrong in relying upon the country report to support her adverse credibility finding. And also introduced into evidence the petitioner's background information which indicates that the government officials often use detention to punish the birth control violators. On page 452 of the administrative record, there is even a picture of a detention room. So we submit to the court that the immigration judge's reliance on her misreading of the country report and her gross disregard of the evidence in record to support her adverse credibility finding fell far short of the substantial evidence required in this circuit. So therefore, the court is compelled to reverse the immigration judge's adverse credibility finding. You have a little less than two minutes if you want to save it. Yeah, I will save it for rebuttal or discuss the remedy if the court, in the event that the court finds that the petitioner is credible. Thank you. May it please the court, Mary Jane Conno representing the respondent U.S. Attorney General in this matter. Your honors, what the immigration judge based her decision on was the petitioner's internally inconsistent testimony, his evasiveness during testifying, and the fact that his testimony was inconsistent with the country reports. For example, he said himself, he claims, he wants to claim that her second pregnancy was aborted forcibly. But on the other hand, on page 166 of the record, he volunteered the information that the five-year rule is not enforced. In other words, a rule by the government that you have to have five years between the birth of each child. That's not enforced. Page 166, he said it. He gave no reason why the officials would do this. Secondly, I think it's really important to point out petitioner's counsel's argument here that there's evidence in this record that the government did not know about the third pregnancy, which was the second child born, or what he claims was the third pregnancy. That is not supported by the record here. He gave no testimony that they were in hiding. He did testify that the second child was born in their hometown at the same clinic or hospital where the first child was born. There's no evidence that the government did not know about that second child's birth, the pregnancy, or the birth. In addition to that, concerning his testimony on birth control, he said, he testified, the government will definitely require, definitely was his word, that a couple use birth control if they have more than two children. That's on page 168 of the record. But his testimony throughout was that, for the most part, they were not required to use birth control. What he said was, after the birth of the first child. I don't find any of these arguments in the immigration judge's report. Did he rely on the arguments you were now making? Your Honor, yes. I believe that the immigration judge's adverse credibility decision is based on all the, that she. No, based on whatever he said it was based on. Which of the things. It's a woman, Your Honor. But she. Well, that doesn't. Well, she found that it's not credible. And what I'm saying is there's plenty of record evidence. No, that's not the test. You can't say it's not credible and then ask the court or the board or anybody else to go looking for the record, through the record, and find out why it's not credible. The reasons why it's not credible have to be set forth in the report. And that's, those are the only reasons. Well, there are plenty of reasons, Your Honor. That can sustain a finding of lack of credibility. What she did say, what she said, among other things, is that the testimony was inconsistent with the country report. Yes. The country report. In what manner was it inconsistent? The country reports show that the average number of children is two. His testimony was that he's one of three children. His sister has two children. And he did not say that she ever had any problems. One of his sisters. The other sister recently married. And he has three children. Now, he said he wasn't, if the, his claim is that the birth control authorities were after them and were punishing him. And the rest of his testimony doesn't support that. And that was the basis of the adverse credibility finding. They were not required to use any birth control. He said a ring was, an IUD was required to be inserted in his wife after the first child was born. A doctor removed it because she had medical problems with that. And he testified they were never requested or required to use birth control after that. That is inconsistent with his claim that he was being harassed or persecuted or punished because of the number of children that they had. The judge, as you said, the judge did accept that he had a 20,000 RMB fine imposed against him. But I think that's pretty typical in these sorts of cases. He testified himself that it wasn't a problem to pay that fine. It was a lot more than what he made, he made. What was the fine for? It was for having two children. Having an extra child. All right. So that that was a prohibited act, having a second child. Apparently it was. All right.  The question is whether he was persecuted for it, Your Honor. That's a different case. It appears that he wasn't. It appears that he wasn't, Your Honor. He said as far as paying that fine, the petitioner has raised a new argument here on appeal saying that it's some sort of extreme economic persecution. First of all, he didn't raise that argument to the board. But secondly, that argument is absolutely not supported by the petitioner's testimony here. Petitioner testified that it was not a problem. His problem was that he wanted more children. And, yes, it's conceded that the Chinese government has this policy, they're trying to keep the birth rates down. But he said it's not a problem to pay these fines because what they do is they get money, they borrow money from family and friends and sympathetic neighbors, and they pay these fines. And he said slowly, slowly, slowly, we pay these people back. Given the immigration judge, you might have built a good case on credibility. The immigration judge has a different view of the fine than you do. She says it's astronomical. And it was an astronomical fine of 20,000 RMB for a technician making approximately 15,000 a year. The economic pressure of satisfying fines levied against a family having more than one or two must certainly seem astronomical. It's the second time in two sentences. She describes the fine as astronomical, and you say it's no problem at all. He said it was no problem at all, Your Honor. That's his testimony. Yes, it's a large fine. When he only made 15,000 a year, the fine was 20,000. But, Your Honor, he paid 60,000 to leave the country, three times that fine. Apparently, he's able to pull together the money when he wants it or when it's necessary. He testified that it's not the money. But your point anyway is that the economic consequences are not a basis for persecution. Yes, Your Honor. Firstly, as I said, because that argument was abandoned because they didn't raise it below. But secondly, because he testified himself that it wasn't a significant problem. What do you view as what the I.J. based the determination of lack of credibility on? What specific statements does the I.J. say lead her to the conclusion that his statements were incredible? Well, the immigration judge talked, you mean in the country report? No, in her report. What is the basis for her determination? Well, she just doesn't believe all these stories. They don't make sense. I think that's what it is. At one point, she told him, stop playing cat and mouse with me. During the testimony, he was being very evasive. When she asked him. . . Do you find anything in this report that talks about his evasiveness? Well, during the testimony. . . No, not the testimony. Your Honor, she. . . In that decision, there is supposed to be the reasons why she finds him not credible. Your Honor, I don't think that her decision is required to mention every single reason. I think that the record is very clear. I might interrupt you. The problem with that is that we have cases that say if you cannot raise a new credibility issue on appeal to the BIA. . . In other words, you have to get the notice of the credibility issues that are in play. The BIA can't pluck out a new issue. The BIA here just relied on the IJ's decision. So, we're stuck, I think, with what she found to be the lack of credibility. Which to me is, though, it's the only. . . She didn't believe the 1995 incident of forced abortion. Well, and it's for all of these reasons, Your Honor. These reasons are apparent in the record. I think it's clear. That's the point. It can't be apparent in the record. That's not the legal standard. You can't point to what's in the record if it's not in the IJ's report as the reason. She. . . His testimony was evasive. It doesn't say that in the report. His testimony was internally inconsistent. And his testimony was inconsistent with the country reports. The country reports say, and she did say that, the country reports say that the average number of births is two, that a significant number of people in rural areas. So his testimony was that he lived in a rural area. That was on page 161. That the average number. . . A significant number of people have. . . families have three children there. His testimony. . . Yet she found he was fined for having a second child, as you acknowledge. Mm-hmm. So they punished him for a second child, but you say we shouldn't. . . It's inconsistent for him to say you were not allowed to have three children or two children. The question is whether he was persecuted on that. And our position is certainly that a fine is not persecution. No, that's not the question, whether a fine is persecution. The question is, your argument was that it's. . . Yet he was fined for having two. Well, the. . . With an astronomical fine. Well, he said that the third child was born in secret. As it turns out, what it turns out to be is that the child. . . I'm not saying he wouldn't get a third fine for a third child. The question is whether he, in fact, was persecuted or would be persecuted. There's no evidence that he was persecuted or that he would be persecuted. It's perfectly reasonable for the immigration judge to look at those country reports and look at the statistics in these areas and the fact that he lived in a rural area, the number of children that are averaged, the number of children that are common, and the number of children that are in his own family, his siblings as well as his children as well as his sister's children, and say it's unlikely. Substantial evidence supports that conclusion, Your Honor. Thank you. For that reason, we request that the Court deny the petition for review. Thank you. I just want to address one point. If the Court finds that the IG did not support her adverse credibility with substantial evidence, and if the Court vacates the IG's debt decision and finds Patino to be credible, in this case, the Court should not remain the case for the IG to determine whether or not Patino has met his burden in showing that he's eligible for asylum. In a similar case, he versus Ashcroft, the Court discussed this issue, and because this type of cases turn exclusively upon the credibility, if the Court finds Patino to be credible, then it's automatic that he's eligible for asylum. So there's nothing for the BIA to further investigate. So therefore, the Court should grant this petition for review and remain the case with instruction to the BIA to grant, to assess discretion in whether or not to grant petitioner's application for asylum. Thank you. Thank you, Judge. Case case directed will be submitted. The next case on the calendar is Shavaraman versus Ashcroft. Thank you.
judges: Browning, Reinhardt, Thomas